FRANK HASTINGS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. In this case it was no abuse of the discretion of the court to refuse a new trial on the evidence.   The verdict is sustained by the testimony.
2. It is not error to refuse a new trial on the ground of newly discovered testimony, when such testimony only goes to show that a principal witness, who was sworn on the trial against the movant, entertained strong feelings of dislike toward him, and had said he would like to see him hung.

Criminal law.   New trial.   Before Judge BUCHANAN. Coweta Superior Court.   March Term, 1874.

Frank Hastings was placed on trial for the offense of murder, alleged to have been committed upon the person of Wesley Camp on January 16th, 1874.   He pleaded not guilty.

Dr. A. B. Calhoun, D. H. Simms and John Lester, testified as to the character of the wound on the body of deceased, his position when found, and the distance of the body from town when discovered.   Dr. Calhoun believed the wound on the head caused the death of deceased.   D. H. Simms said the body had begun to decompose, and was offensive.   John Lester corroborated him.

Emily Young testified as follows : She lived with prisoner; deceased also lived with prisoner; worked in town and came home every night to wait on his father, who had been crippled and was staying with prisoner until he should recover;

Hastings *vs.* The State of Georgia.

the last time she saw deceased, Wesley Camp, he went to New-nan to get a warrant for prisoner, because he had been shoot-ing about his house, and had caused deceased's father to break his leg over; this was on a Friday in January; on the follow-ing Tuesday his body was found; she had heard prisoner threaten the life of deceased three times; prisoner told de-ceased if he ever caught him in bed with his wife he would kill him; heard him say this three times; deceased told pris-oner that his wife was old enough for his mother; prisoner threatened to kill her if she did not sleep with him; has lived in prisoner's house ever since Christmas; she sees spirits; used to see a great many; it has been a month since she saw one; it was black, had no eyes or head; came up to witness and did nothing but blow; prisoner was at home every night before the shooting, and slept with his wife; has talked to the pros-ecutor about this case, and never said anything until he came to see her; on the Friday alluded to, when prisoner came home, he passed around his garden from the direction of the road, through the pine thicket; this road was not much used.

William H. Garrold testified that he saw two negroes near the place where the body was found; that one of them stepped across the road and cut a stick, but cannot say that prisoner was the man; that the smaller of the negroes had on a short black coat.

Wade Keller testified that the last time he saw deceased was at Captain Sargent's store, on Friday before the body was found; that prisoner stepped out and spoke to deceased very politely, and they went down towards Stephen Sherman's shop; that deceased did not have on black pants, but jeans; that the road on which witness saw prisoner went to his house.

Lewis Miller testified, that on one occasion, prisoner, late at night, stepped to the door and fired off his gun; that the next morning he came back and asked deceased where he had slept the night before, and told him if he caught him in the bed with his wife he would kill him; that he had talked with Emily about her testimony; that he lived with prisoner's fam-ily; that he was not married, and slept in the same room with

Emily; that the last time he saw prisoner and deceased together they acted friendly.

Lucy Beadles testified that on Friday, before the body was found, prisoner came to her house, *crying*, and told her goodbye; said he was obliged to leave, he could not see any peace in his family.

Jeff. White testified that on Wednesday before the body was found, prisoner told him there were some people in his family who were troubling him, and that he intended to master his own house; that he would get some of them out of his way and leave.

Burton Reese testified that a few days before the body was found prisoner was at the depot waiting for the train, and asking how long it would be before its arrival.

Bob Lucas testified that he heard the testimony of Emily Young, as to the direction prisoner came around his garden, and it was from the direction of the body.

D. H. Simms testified that he arrested defendant in Atlanta, some weeks after the body was found; that he made no effort to escape.

The prosecution having closed, prisoner made his statement as follows: He was on the most friendly terms with the deceased; took him and his father in his house while the old man's leg was healing; treated them kindly, and never saw anything wrong in deceased; is innocent of killing him; his conduct in going to Atlanta he explained to Dr. Calhoun, from whom he rented; says he told Dr. Calhoun that he could not live there as long as white people kept firing at his house; John Cooper had threatened to kill him, and had fired at his house because he had not voted right at the municipal election; went to Atlanta to hunt a place to live, because his brother was there, and was on the streets every day, and saw people from Newnan; tried to get work from Mr. Cook, in Coweta, but his wife was not willing, and wanted to go to Atlanta.

The jury found the defendant guilty, and recommended that he be imprisoned for life in the penitentiary. He moved for a new trial, because the verdict was contrary to the evi-

dence, and because he had recently discovered that Emily Young, one of the witnesses for the state, had stated before the trial that she would tar and feather and burn him ; that she wished to see him burned, and would like to stand by and see it well done.

In support of this last ground were the usual affidavits showing diligence, etc.

The motion was overruled, and defendant excepted.

P. F. SMITH; HOWARD VAN EPPS; H. T. LEWIS, for plaintiff in error.

A. H. COX, solicitor general, for the state.

McCAY, Judge.

1. There is no complaint of any error of the court during the trial of this case. We are simply appealed to to determine whether the judge has abused his discretion in refusing to set aside the verdict as contrary to the evidence. We have so often expounded the rule upon which this court decides cases of this character, and so often given the reasons for it, that we will not again go over the subject. The question of the guilt of a party before a jury is, does the evidence show beyond a reasonable doubt that he is guilty ? Before a judge, on a motion for a new trial, the question is, have the jury found him guilty with such slight evidence of guilt as to indicate passion, prejudice, mistake, carelessness or the like on their part? Before this court the question comes in still another shape; here it is : Has the judge, in refusing the new trial, so plainly erred in his judgment upon the verdict as to make his decision an error of law? Has he so plainly mistaken the evidence as to show that in his judgment refusing to treat the verdict as the result of passion, prejudice, mistake or the like, he has shown that want of a wise discretion and sound judgment which a judge ought in such cases to exhibit? We do not, in this case, feel that the judge has thus erred. We do not think that, under the facts of this case,

an honest, sensible jury might not fairly come to the conclusion that the defendant was guilty. He had, undoubtedly, a feeling of enmity to the deceased, and had threatened his life. His enmity, too, was the result of jealousy—a feeling, that of all others, most readily leads to crime and to revenge. He was the last person seen in company with the deceased, and at the time they were going together towards the place where the body of the deceased was found. Two men, answering closely the description of the deceased and the prisoner, were seen, shortly after they left town together, upon the very unused road where the body was found, and one of these men— the larger—was seen to cut just such a stick as would produce the fraction of the skull which evidently caused the death. The prisoner was seen coming from the very direction where the body was found. They left town together to go to the same house, and within about the proper time for the trip, the prisoner got to the house, and the deceased was not with him, and was never seen again alive. The condition of the body fairly indicated that the death must have occurred on the day they left town together, and this is further indicated by the fact that the deceased failed to return, as was his habit, to his invalid father, and to the house he had left town to go to. Also all the strange conduct of the prisoner when he got home, and his sudden determination to leave his wife and children, and go off never to return, and to actually go, almost as soon as the determination was made, speak against him. He leaves town at, say ten o'clock, with deceased, goes home alone, announces his determination, and is back at the depot just after twelve and is off at one; and though he makes a statement, he leaves all these things unexplained. We cannot say that here is only slight evidence of guilt, on the contrary, we can easily see how twelve men, acquainted *with the localities,* seeing the prisoner, and able to estimate his identity with the man seen cutting the stick, might fairly conclude he was guilty, and how the judge, who, as the evidence shows, lives in the same vicinity, and was, himself, acquainted with the localities, which it is always difficult to describe so that an ap-

pellate court can understand them, and which are especially confused in this record, might well refuse to set aside the verdict.

2. Nor do we think the newly discovered testimony is of the character or importance to authorize a new trial. At least, it only tends to show that the witness thought badly of the prisoner, and thought him guilty of this killing. If she did, her desire to see him hung for it was very natural; for if he be the slayer, the killing was a very wicked and outrageous one—a murder of the blackest kind, by a large man of a small one, and that, too, by surprise, as the deceased was found with his hand in his pocket. We doubt if the evidence of what Emily said had been before the jury it would have affected their verdict; and the well settled rule is, that to justify a new trial for newly discovered evidence, that evidence must be of such a character as would probably change the result.

Judgment affirmed.